IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANGELO V.  MILINI, JR.,**                    Case Number 5:10 CV 886

     Petitioner,                              Judge James S. Gwin

      v.                                    REPORT AND RECOMMENDATION

**KEITH SMITH**, Warden,

     Respondent.                          Magistrate Judge James R. Knepp II

## Introduction

*Pro se* Petitioner Angelo Milini, Jr., a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1).  Respondent, Warden Keith Smith, filed a Return of Writ (Doc. 13) with exhibits (Docs. 13-1 – 13-5), and Petitioner filed a Traverse (Doc. 14). Petitioner also filed a motion for appointment of counsel (Doc. 3) and motion for an evidentiary hearing (Doc. 4).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). For the reasons discussed below, the undersigned recommends the Petition be denied.

## Procedural Background

On February 19, 2008, a Stark County, Ohio grand jury indicted Petitioner on charges of rape with repeat offender specification, kidnapping, burglary, domestic violence, and disrupting public services.  (Ex. 1, Doc. 13-1, at 1-2).[1] The charges arose from an incident involving Petitioner and his estranged wife, Tanisha Baker-Milini.  Petitioner pleaded not guilty to all charges. (Ex. 3-4, Doc.

---

[1] A superceding indictment on May 19, 2008 contained the same charges.  (Ex. 2, Doc. 13-1, at 4-5).

13-1, at 7-8). Following a two day trial (Docs. 13-3 and 13-4), the jury found Petitioner guilty of all charges on July 17, 2008. (Ex. 5, Doc. 13-1, at 9-16). In a judgment entry filed July 28, 2008, the trial court sentenced Petitioner to a total of eighteen years in prison. (Ex. 7, Doc. 13-1, at 19-24).

Petitioner, through counsel, brought a timely appeal from the trial court's judgment (Ex. 12, Doc. 13-1, at 45),[2] raising four assignments of error:

1.  The trial court erred in not granting Appellant's motion for dismissal in accord with Crim. R. 29, as there was insufficient evidence to convict the appellant;

2.  The jury's verdict against the appellant on the charges of rape, kidnapping, repeat violent offender, domestic violence, burglary, and disruption of public services was against the manifest weight of the evidence and should be overturned;

3.  Trial court abused its discretion in not allowing evidence that the alleged victim had falsified reports about domestic violence against the appellant;

4.  Appellant was deprived of a fair trial and due process of law as guaranteed by the Ohio and U.S. Constitutions, due to the ineffective assistance of counsel resulting from counsel's stipulation to the admission of Appellant's prior convictions for domestic violence and counsel's failure to call witnesses and allow the Appellant to testify.

(Ex. 13, Doc. 13-1, at 53). The state responded (Ex. 14, Doc. 13-1, at 85-116), and on September 28, 2009, the Ohio Fifth District Court of Appeals affirmed the trial court's judgment. (Ex. 15, Doc. 13-1, at 117-128); *State v. Milini*, 2009 WL 3112030 (Ohio App. 5 Dist.).

On November 9, 2009, Petitioner, acting *pro se*, filed a timely appeal to the Supreme Court of Ohio. (Ex. 15, Doc. 13-2, at 1). In his memorandum in support of jurisdiction, Petitioner argued two propositions:

---

[2] Petitioner's first appeal was dismissed because the trial court's judgment failed to identify the manner of conviction. (*See* Ex. 8-9, Doc. 13-1, at 25, 32). The trial court issued corrected judgment entries. (Ex. 10-11, Doc. 13-1, at 33-44).

1.    Trial Court Abused its Discretion when denying Appellant's Motion for Acquittal pursuant to Criminal Rule 29.

2.    Appellant was denied Effective Assistance of Counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where Counsel made a plain error with regards to an 'uninvited error' when introducing and propounding Appellant's prior criminal conviction of Domestic Violence and when not adequately cross-examin[ing] . . . the State's key witness, and when failing to make [a] proper Motion to the Court in accordance with explicit Ohio Rules of Court.

(Ex. 17, Doc. 13-2, at 3-19).  On January 27, 2010, the Ohio Supreme Court denied Petitioner leave to appeal and dismissed the appeal as "not involving any substantial constitutional question."  (Ex. 18, Doc. 13-2, at 81).

Petitioner then filed the instant habeas Petition on April 18, 2010 (Doc. 1),[3] raising three grounds for relief:

1.    Denial of due process of law and a fair trial when trial court denied Petitioner's motion to acquit based on insufficiency of the evidence pursuant to Ohio Criminal Rule 29;

2.    Denial of right to effective assistance of counsel by: 1) "introducing and propounding Petitioner's prior criminal conviction of Domestic Violence"; 2) failure to adequately cross-examine key witness; and 3) failure to get other acts evidence excluded;

3.    Denial of due process of law when trial court did not permit Petitioner to introduce evidence that alleged victim had falsified reports about domestic violence against Petitioner.

---

[3] The Petition is timely. Petitioner's conviction became final on April 27, 2010, 90 days after the Ohio Supreme Court denied leave on January 27, 2010. 28 U.S.C. § 2244(d)(1)(A); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).  Petitioner then had one year to file his federal habeas petition.  Petitioner filed his original Petition on April 18, 2010 (Doc. 1), within the allotted year, and it is therefore timely filed.

## Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, and rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004). The state appellate court summarized the facts:

BURGLARY
{¶ 21} Ms. Baker-Milini testified that on the afternoon of the attack, she locked the door to her apartment and went to the mailbox to pick up her mail. Vol. I T. at 140. On the way back, as she unlocked the door, appellant grabbed her around the neck from behind and pushed her into her apartment. *Id.*

RAPE & KIDNAPPING
{¶ 22} Ms. Baker-Milini was forced by appellant to enter her apartment. *Id.* Appellant began choking her and hitting her. *Id.* Appellant knocked Ms. Baker-Milini down in the kitchen and dragged her into the bedroom. *Id.* at 146, 485 N.E.2d 717. Appellant called her a bitch because she talked to the police about him. Id. He pushed her down on the bed, squeezed her neck, and beat her in the "bowels" causing her to urinate on the floor. *Id.* at 147, 485 N.E.2d 717. Appellant took off her clothes and forced her to have vaginal intercourse. *Id.* at 148, 485 N.E.2d 717. After the incident, appellant "washed off" and permitted Ms. Baker-Milini to "wash off" also. *Id.* at 149, 485 N.E.2d 717. He then made her return to the bedroom and choked her again, making her feel as if she was going to blackout. *Id.* at 150-151, 485 N.E.2d 717. The entire incident lasted between eleven to twelve hours. *Id.* at 140, 485 N.E.2d 717. Ms. Baker-Milini testified she was too sore and too afraid to attempt an escape. *Id.* at 154, 485 N.E.2d 717.

{¶ 23} Canton Police Officer Brock Heald testified after responding to the 911 call, he observed the apartment in disarray. *Id.* at 271, 485 N.E.2d 717. He noticed Ms. Baker-Milini acted as if she was in shock, "like she was like disconnected from what had happened." *Id.* at 267, 485 N.E.2d 717. There was a red mark/cut on her throat that looked like a thumbnail. *Id.* at 268, 485 N.E.2d 717. He did not observe any torn clothing. *Id.* at 276, 485 N.E.2d 717.

{¶ 24} Karen Rowlands, the sexual assault nurse examiner at Aultman Hospital, also noticed Ms. Baker-Milini's "flat affect" which she testified was common with sexual assault victims. *Id.* at 228-229, 485 N.E.2d 717. Ms. Rowlands noted swelling in Ms. Baker-Milini's neck caused by trauma. *Id.* at 236, 485 N.E.2d 717; State's Exhibit 7. There were no facial contusions. *Id.*

DISRUPTION OF PUBLIC SERVICES

4

{¶ 25} Ms. Baker-Milini testified that before appellant left her apartment on the morning after the attack, he destroyed the cords to the telephones in the kitchen and bedroom. *Id.* at 151-153, 485 N.E.2d 717. Officer Heald testified he observed the damaged telephone lines when he responded to the 911 call. *Id.* at 282, 485 N.E.2d 717.

DOMESTIC VIOLENCE

{¶ 26} Ms. Baker-Milini testified she and appellant were married, but estranged. Id. at 132, 133-134, 485 N.E.2d 717. Appellant stipulated to a prior conviction for domestic violence. Ms. Baker-Milini's testimony on the domestic violence count was the same testimony given for the rape and kidnapping counts.

{¶ 27} Appellant argues this convictions rest on the credibility of Ms. Baker-Milini and her testimony is not credible. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159, 1997-Ohio-260.

{¶ 28} Because rape and kidnapping are generally done while no witnesses are present, single testimony can be credible. From the evidence presented, we find testimony that supported Ms. Baker-Milini's testimony i.e., the observations of the police officer and nurse concerning her demeanor and injuries, the DNA results from the analysis of the towel as being appellant's (Vol. II T. at 14), and the police officer's testimony about the condition of the apartment. This testimony lends credence to Ms. Baker-Milini's testimony. Further, although not required, there was proof of a motive for the attack. Appellant called Ms. Baker-Milini from the hospital where he was a patient and yelled at her for telling the police where he was. Vol. I T. at 138. Appellant was so angry, he went AWOL from the hospital. Id. at 251-252, 674 N.E.2d 1159.

{¶ 29} We find the corroborating testimony lent credibility to Ms. Baker-Milini's testimony, and the evidence was sufficient to establish appellant's guilt.

*Milini*, 2009 WL 3112030.

## Standard of Review

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall

not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

## Discussion

### Ground One: Due Process – Insufficient Evidence

In Ground One, Petitioner argues the evidence was insufficient to convict him. Petitioner raised this argument to both the appellate court and the Ohio Supreme Court. (*See* Docs. 13-1, at 66-69; 13-2 at 9-13).

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309-16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). In examining a sufficiency

6

claim, a habeas court can only look to "whether the *record* evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318 (emphasis added). The court must view the evidence in the light most favorable to the prosecution.  *Id.* at 326.

Petitioner's sufficiency of the evidence claim is governed primarily by 28 U.S.C. § 2254(d)(2).  This section accords a "double layer of deference" to state prisoner challenges:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*,  567 F.3d 191, 205 (6th Cir. 2009).

Petitioner points to several facts he alleges show the evidence was insufficient:

1.    Petitioner lived at the residence where the crimes occurred, and therefore could not be convicted of burglary;

2.    Petitioner had recently had surgery for a hernia and was not physically capable of the attack;

3.    Officer Heald was not qualified to testify as an expert witness as to the victim's mental state;

4.    There was a lack of physical evidence of the crimes; and

5.    Ms. Baker-Milini was not credible because she: had made false accusations against him in the past; had a substance abuse problem; was under the care of a psychiatrist and took medication; had been violent toward Petitioner and other men, and had a

motive to testify falsely; and there was evidence that Petitioner and the victim spent time together prior to the incident.

(Doc. 1, at 10-11; Doc. 14, at 1-4, 7-12). Respondent contends there was sufficient evidence to convict Petitioner and the Ohio Court of Appeals did not unreasonably apply federal law in finding – as quoted above – sufficient evidence supported Petitioner's convictions.

*Burglary Conviction*

Petitioner argues he lived in the house and therefore could not have been convicted of burglary because he could not satisfy the trespass element. Ms. Baker-Milini testified she moved into the home alone (though Petitioner helped her move) and Petitioner did not live with her. (Trial Tr. Vol. I, Doc. 13-3, at 134-36, 174-75, 286-87). She also testified Petitioner was homeless at the time of the crime. (*Id.* at 173, 186). But in his Traverse, Petitioner argues the testimony of Karen Rowlands, the nurse who examined Ms. Baker-Milini after the crimes, that Ms. Baker-Milini reported living with someone who smokes, supports his claim that he lived there. (*See id.* at 234). Although Petitioner argues he had a key to the residence and that neighbors confirmed he lived at the residence, he does not point to evidence in the record to support these allegations.

To the extent there is conflict in the testimony, viewing the evidence in the light most favorable to the prosecution, as a reviewing court must, a rational trier of fact could have concluded that Petitioner did not live at the residence, and thus satisfied the trespass element. The state court decision finding sufficient evidence to support the burglary conviction was therefore not contrary to, or an unreasonable application of federal law.

8

*Petitioner's Physical Capabilities*

Petitioner contends he was recovering from hernia surgery and was therefore physically incapable of the attack. He cites the following exchange between his trial counsel and Lisa Swogger, a nurse who treated him at the hospital, as support:

Q:     Also in that medical packet of records is an indication about middle of the page where my client reports consult general surgeon on call, or someone reports that, due to a painful hernia; is that right?
A:     I see that, yes.

(Trial Tr. Vol I, Doc. 13-3, at 259). There was, however, conflicting evidence in the record. Ms. Baker-Milini could not remember why Petitioner was in the hospital. (*Id.* at 192). Ms. Swogger also testified she gave Petitioner blood pressure medication and pain medication, he was not lethargic, and although she may have overheard Petitioner on the phone discussing a surgery, she was unaware of any scheduled surgery. (*Id.* at 253-54, 262-63). It is not up to this Court to re-weigh the evidence. *Brown*, 567 F.3d at 205. The jury had this evidence, and believed Ms. Baker-Milini's testimony.

*Officer Heald*

Petitioner argues the evidence was insufficient to convict him because "Police Officer Brock Heald made inadmissible non-expert determinations at trial th[at] substantially prejudiced Petitioner with respect to the actual mental state and psychological condition of the alleged victim when he was not qualified to testify to such as an expert witness." (Doc. 1, at 11). This claim involves the Ohio Rules of Evidence and is thus a question of state law not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

9

*Lack of Physical Evidence*

Petitioner also argues there was no physical evidence supporting Ms. Baker-Milini's testimony. Petitioner argues the lack of physical injury is inconsistent with Ms. Baker-Milini's testimony:

> The fact that the rape crisis examining nurse at the hospital only described in the way of physical cuts, bruises, marks, scars[,] or abrasions was {what looked like a} "thumbnail mark".
>
> The fact [that] there w[as] no torn clothing, no bruises, no contusions, no lacerations or any other type or kind of injuries suffered by the alleged victim after what she reported was a 12 hour vicious and violent and continual physical and sexual aassault[.]

(Doc. 11, at 25).  First, as Respondent points out, physical injury was not an element of any of the crimes of which Petitioner was convicted. Second, as discussed below, Petitioner's challenges are primarily to Ms. Baker-Milini's credibility, something his trial counsel challenged on cross-examination. (Trial Tr. Vol I, Doc. 13-3, at 162-207).

*Credibility*

Petitioner generally challenges Ms. Baker-Milini's testimony as not credible and contends his convictions are therefore not supported by sufficient evidence.

A habeas court does not "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The factfinder weighs the probative value of the evidence and resolves any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). The testimony of a single witness can be sufficient for conviction. *Murphy v. Sowders*, 801 F.2d 205, 210 (6th Cir. 1986) ("[T]he testimony of a single witness which is assigned a likelihood of truth is sufficient to support a finding of guilt, and would justify a verdict

10

in accordance with such testimony, even though a number of witnesses may have testified to the contrary if, after consideration of all of the evidence in the case, the factfinder assigns greater belief to the accuracy and reliability of the one witness.").

The appellate court rejected Petitioner's challenge to Ms. Baker-Milini's credibility, noting that "single testimony can be credible" and that other testimony supported Ms. Baker-Milini's report. *Milini*, 2009 WL 3112030, ¶ 28. Moreover, the jury had before it much of the evidence Petitioner now claims undermines Ms. Baker-Milini's credibility:

1. Ms. Baker-Milini testified she had been on medication for depression for a long time (Trial Tr. Vol I, Doc. 13-3, at 172-74).

2. Ms. Baker-Milini admitted pleading no contest to falsification in 2005, but explained that the falsification conviction arose out of a domestic violence report, which she later recanted before the grand jury out of fear of Petitioner. (*Id.* at 206-09).

3. Ms. Baker-Milini admitted she had spent time with Petitioner at the hospital a few days prior to the attack, and she had told the hospital she was his wife. (*Id.* at 136-37; 191-93).

Despite having this evidence, the jury believed Ms. Baker-Milini's testimony. It is not the Court's role to second-guess this credibility determination. *Matthews*, 319 F.3d at 788. Petitioner's allegations that Ms. Baker-Milini had a substance abuse problem and physically abused him and other spouses are not part of the record presented to the jury and are therefore not relevant to a sufficiency of the evidence claim. *Jackson*, 443 U.S. at 318 (a court must "determine whether the *record* evidence could reasonably support a finding of guilt beyond a reasonable doubt" (emphasis added)).

Having considered all the evidence before the trial court and the decision of the Ohio appellate court, the undersigned concludes the Ohio appellate decision was not an unreasonable application of *Jackson*. As such, Petitioner's first ground is denied.

**Ground Two: Ineffective Assistance of Counsel**

In Ground Two, Petitioner argues he was denied his Sixth Amendment right to effective assistance of trial counsel for several reasons:

1.  Trial counsel erred by stipulating to Petitioner's prior domestic violence convictions;

2.  Trial counsel failed to adequately cross examine Ms. Baker-Milini;

3.  Trial counsel failed to exclude other acts evidence;

4.  Trial counsel failed to call certain witnesses on defendant's behalf;

5.  Trial counsel failed to call Petitioner to the stand;

6.  Trial counsel "did not permit for Petitioner to refute any of the accusations or information presented against him";

7.  Trial counsel "failed to prevail on Motions and Pleadings to introduce impugning evidence and testimony of the alleged victim[.]"

(Doc. 1, at 3, 14-15).[4]  Respondent contends some of Petitioner's ineffective assistance arguments are procedurally defaulted and others are without merit.  (Doc. 13, at 18-20).

_____

[4] In the space for "Ground Two" in the Petition, Petitioner raises only the first three of these claims of ineffective assistance.  (*See* Doc. 1, at 3).  However, in the "statement of the case and facts" attached to the Petition, Petitioner argues counsel was ineffective for the other reasons listed.  (*See id.* at 14-15).  Because Petitioner is *pro se*, the Petition will be liberally construed and the court will examine all seven allegations of ineffective assistance.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

*Exhaustion & Procedural Default*

A petitioner must fairly present any claims to the state courts in a constitutional context to properly exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (a claim is exhausted when a petitioner gives the state courts a full and fair opportunity to rule on his claims by fairly presenting all claims to the highest court in the state). For an ineffective assistance of counsel claim to be fairly presented to the state courts, it must be based on the same allegedly ineffective action in federal court as identified in state court. *Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003) ("[T]o the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts."). If a petitioner fails to present a claim to the state courts and no state remedy remains available, he has procedurally defaulted that claim. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).

There is a four-step test to determine if a claim is procedurally defaulted:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it.

2. The Court then determines whether the state courts actually enforced their procedural sanction.

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review.

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

13

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Where a state court is silent as to the reason for denying a claim, the Sixth Circuit applies a presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). In Ohio, if a constitutional claim is presented to the supreme court without presentation to the appellate court, the Ohio Supreme Court will not consider it. *See Eskridge v. Konteh*, 88 F. App'x 831, 838 (6th Cir. 2004) (citing Ohio cases); *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *State v. Issa*, 93 Ohio St. 3d 49, 62 (2001) ("Appellant failed to raise this issue below and thereby waived it."); *State v. Jester*, 32 Ohio St. 3d 147, 154 (1987).

A petitioner may overcome procedural default by showing both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

To the Ohio appellate court, Petitioner argued trial counsel was ineffective for: 1) stipulating to prior domestic violence convictions; 2) failing to call witnesses; and 3) not allowing Petitioner to testify.  (Ex. 12, Doc. 13-1, at 72-73). In his statement in support of jurisdiction to the Ohio Supreme Court, Petitioner argued trial counsel was ineffective for: 1) stipulating to prior domestic violence convictions; 2) failing to call witnesses; 3) not adequately cross-examining the Ms. Baker-

Milini; and 4) failing to file a motion to admit the Ms. Baker-Milini's falsification conviction.  (Ex. 17, Doc. 13-2, at 14-18).

*Cross Examination and Falsification*

Although Petitioner raised his claims of ineffectiveness based on counsel's failure to: 1) adequately cross-examine a witness; and 2) file a motion to admit the witness's falsification charge to the Ohio Supreme Court, this is insufficient. Petitioner presented these claims for the first time before the Ohio Supreme Court and the court denied review without opinion. The Court therefore presumes the Ohio Supreme Court would have enforced the procedural bar imposed by Ohio law. *Simpson*, 94 F.3d at 203. As noted above, the Ohio Supreme Court will not hear constitutional claims not raised at the appellate level. *See Eskridge*, 88 F. App'x at 838; *Issa*, 93 Ohio St. 3d at 62, *Jester*, 32 Ohio St. 3d at 154.  Because no state remedy is available, and as discussed below Petitioner cannot show cause, Petitioner has defaulted these claims. *Eskridge*, 88 F. App'x at 838 (finding claims presented for first time to Ohio Supreme Court procedurally defaulted when no cause shown).

*Failure to Call Witnesses*

Petitioner argues counsel was ineffective for failing to call any witnesses on his behalf at trial.  In his Traverse, he specifically argues trial counsel erred in not calling Craig Johnson, Carlina Milini, Ethen Snell, and Elizabeth Tritt. To support his claims, Petitioner refers to transcripts from defense interviews with these witnesses that he submitted with his brief to the Ohio Supreme Court. (*See* Doc. 13-2, at 32-52).

Although Petitioner exhausted a general claim that his trial counsel was ineffective for not calling any witnesses by raising it on direct appeal before both the Ohio appellate and Supreme

15

Courts, he has defaulted any claim regarding these specific witnesses. *See Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010). In *Landrum*, the petitioner argued on habeas that his counsel was ineffective for failing to call a particular witness during the guilt phase of trial. The Sixth Circuit held that "[a]lthough [the petitioner] did raise an ineffective assistance of trial counsel claim . . . he did not include the allegation about [trial counsel's failure to] introduce[] [the witness's] testimony in the guilt phase" and "[t]he affidavits on which [the petitioner] relies did not present the factual basis for the ineffective assistance claim raised here because no corresponding claim was made in the state post-conviction petition." *Id.* at 918-19. The *Landrum* court concluded the petitioner's claim was therefore unexhausted, and procedurally defaulted because no state court remedies remained. *Id.*

Likewise, Petitioner has no remaining remedy in state court for his claim that counsel was ineffective for failing to present these four witnesses. Because Petitioner had new counsel on direct appeal, *res judicata* bars Petitioner from raising any ineffective assistance of trial counsel claim that could have been determined on direct appeal without looking to evidence outside the record. *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002) (citing *State v. Cole*, 2 Ohio St. 3d 112 (1982)). Ohio courts will consider an ineffective assistance of counsel claim based on evidence outside the record in a post-conviction petition. *Rust*, 17 F.3d at 160. Petitioner, therefore, might have been able to bring his claim for ineffective assistance based on trial counsel's failure to call these *specific* witnesses in a state post-conviction proceeding. However, the time for bringing such a petition has expired. *See* Ohio Rev. Code § 2953.21(A)(2) (requiring a petition for post-conviction relief be filed

no more than 180 days following the date on which the trial transcript is filed in the state court of appeals on direct appeal).  As such, the claim is procedurally defaulted. *Gray*, 518 U.S. at 161-62.[5]

Petitioner has not asserted any argument for cause and prejudice to overcome these defaults nor does the court see any basis. Although Petitioner might argue his appellate counsel was ineffective for failing to raise these claims in the first instance before the appellate court – the cause of the default – he has defaulted any such claim of ineffective assistance of appellate counsel by not raising it in the state courts. *See Dietz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) ("A claim of ineffective assistance of counsel must be presented to the state courts before it may be used as cause for procedural default." (citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)); *see also Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 436 n.7 (6th Cir. 2006) (ineffective assistance of appellate counsel claim defaulted when petitioner failed to file a motion to reopen in the Ohio Court of Appeals within time specified by Ohio Appellate Rule 26(B)). Therefore, the only

---

[5] Even if this claim were not defaulted, it is without merit.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Trial counsel could have rationally concluded that it was better trial strategy to cross-examine Ms. Baker-Milini and not present any witnesses.  Two of the four witnesses were related to Petitioner and one was previously married to Ms. Baker-Milini. Their testimony therefore would have presented inherent issues of bias. As such, this Court cannot say that it is an unreasonable application of *Strickland* to find counsel's failure to present them not ineffective assistance. Additionally, there is nothing in the record indicating defense counsel's reasons for not presenting this testimony. In the absence of such evidence "in the record indicating defense counsel's reasons for not presenting this evidence", the Court is "to presume that 'counsel's conduct falls within the wide range of reasonable professional assistance' guaranteed by the Constitution." *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (quoting *Cone v. Bell*, 535 U.S. 685, 702 (2002)).

ineffective assistance claims Petitioner has not defaulted are: 1) counsel's stipulation to his past convictions; and 2) counsel's failure to call witnesses.

*Merits*

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the *Strickland* test: performance and prejudice. *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 686-692 (1984)).

To meet the performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must be a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

18

*Failure to Call Specific Witnesses*

The appellate court found Petitioner's claim that counsel was ineffective for failing to call witnesses or have Petitioner testify without merit because "[t]he failure to have appellant testify or to present other witnesses clearly falls within the realm of trial strategy." *Milini*, 2009 WL 3112030, ¶ 66. This is not contrary to, or an unreasonable application of federal ineffective assistance of counsel law.  *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (internal quotation and citation omitted)).  Counsel subjected Ms. Baker-Milini's testimony to vigorous cross-examination, and the decision to not call witnesses "might be considered sound trial strategy."        *Stipulation to Past Convictions*

Petitioner argues his trial counsel was ineffective for stipulating to prior domestic violence convictions. Relying primarily on Ohio law, Petitioner claims this was "plain error." (Doc. 1, at 13-17). Count Four of the indictment charged Petitioner with a violation of Revised Code § 2919.25(A) by a person with prior domestic violence convictions.

The appellate court found the stipulation was "invited error" under Ohio law and there was no "deficiency by defense counsel or any demonstration of prejudice to appellant." *Milini*, 2009 WL 3112030, *5-6. During trial, the court explained the effect of a stipulation to Petitioner:

> THE COURT:          Mr. Milini, Mr. Urban has indicated early on that you are hesitant and reluctant to stipulate to any records coming in from the clerk's office, and one of the issues that has arisen is that one of your convictions for domestic violence also has a conviction for felonious assault.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:          And if we put in the judgment entry of the conviction for domestic violence, while we will black out or delete the conviction for felonious assault, the jury is going to have a piece of paper with a bunch of lines drawn through it which

19

|                    | may be prejudicial to your best interest. They're going to have an entry, and it's going . . . to have a lot of deletions, and it may be that the jury can infer that we're hiding something from them and that you had more than just the domestic violence. If you stipulate that you were convicted of domestic violence in '0- -- |
|--------------------|--------------------------|
| MS. DAVE:          | '01. |
| THE COURT:         | -- '01, then no journal entry goes back to the jury, It's just an agreement that you were convicted, you're admitting it and that's the end of it. |
| THE DEFENDANT:     | Yes. |
| THE COURT:         | So that -- the question now is are you going to authorize Mr. Urban to stipulate to your prior convictions so no entry will go back to the jury and they won't read about the conviction, that way they won't notice that we've deleted or [r]edacted certain lines from this entry. |
| MR. URBAN:         | Yeah, I think that's what you want to do? |
| THE DEFENDANT:     | Yes, sir. |

(Trial Tr. Vol. II, Doc. 13-4, at 5-6).

"When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error." *Fields v. Bagley*, 275 F.3d 478, 487 (6th Cir. 2001). Here, as the appellate court found, both Petitioner *himself* and his counsel agreed to stipulate to the prior convictions to avoid potential prejudice. Additionally, even were this not invited error, Petitioner has failed to show the appellate court's decision was an unreasonable application of the *Strickland* standard.  A decision to stipulate to avoid the potential prejudice of having a jury speculate about redacted lines on a judgment entry certainly "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

**Ground Three: Due Process Violation**

In Ground Three, Petitioner argued he was deprived of his Constitutional Right to Due Process when the trial court "erred when not allowing Petitioner to introduce evidence that the alleged victim had falsified reports about Domestic Violence against Petitioner." (Doc. 1, at 3).  In

his Traverse, Petitioner concedes this ground is procedurally defaulted as Petitioner failed to raise it before the Ohio Supreme Court.  (Doc. 14, at 19); (*see also* Ex.  17, Doc. 13-2, at 3-1).  As such, this ground is denied.

**Evidentiary Hearing**

Petitioner requests an evidentiary hearing. AEDPA limits a federal court's ability to grant an evidentiary hearing:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>> (A) the claim relies on-
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Williams v. Taylor*, the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from that of § 2254(e)(2)(A)(ii). 529 U.S. 420, 434-35 (2000). The "failed to develop" clause in § 2254(e)(2) means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

*Id.* at 435.  "Diligence" for purposes of § 2254(e)(2) "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.*

at 437.   If the petitioner fails the diligence requirement of § 2254(e)(2), he is channeled into the strict requirements of subparts (A) and (B). Under those circumstances, a federal court may grant an evidentiary hearing only if the claim relies on "a new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence"; and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B).

The sole means in Ohio law of introducing evidence outside the direct appeal record on a constitutional claim is by filing a petition for post-conviction relief under Revised Code § 2953.21. Petitioner did not do so here.  Having reviewed the Petition and Traverse, the Court finds Petitioner has pointed to no "new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A) & (B). As such, Petitioner's motion for an evidentiary hearing should be denied.

### Appointment of Counsel

Finally, Petitioner requests counsel to assist with his Petition. There is no constitutional right to the appointment of counsel in civil cases, and the court has broad discretion in determining whether counsel should be appointed. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir.1987) ("[A]ppointment of counsel in a civil case is . . . a matter within the discretion of the court. It is a privilege and not a right.") (internal quotation omitted).  The Criminal Justice Act authorizes federal magistrate judges to appoint counsel to a petitioner who brings a habeas petition under Sections 2241, 2254, or 2255.  18 U.S.C. § 3006A(a)(2)(B).  Such an appointment is made only when "the interests of justice so require" and the person is financially eligible. *Id.*  A district court does not

abuse its discretion by declining to appoint counsel where the issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions.  *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v. Shillinger*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

Here, the issues are straightforward and Petitioner has presented his claims coherenty. Therefore, an appointment is not appropriate in this case.  Petitioner's motion should be denied.

## Conclusion and Recommendation

Ground One fails on the merits.  Ground Two is partly procedurally defaulted, and partly fails on the merits. Ground Three is defaulted. There has been no demonstrated need for an evidentiary hearing. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence.  The undersigned therefore recommends the Petition be denied and dismissed in its entirety.

s/James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).